1
2
3
4
5
6
7
8                 UNITED STATES DISTRICT COURT
9            FOR THE EASTERN DISTRICT OF CALIFORNIA
10

11   DONELL THOMAS HAYNIE,                 No.  2:22-cv-02204 DAD SCR P
12            Plaintiff,
13        v.                               ORDER AND FINDINGS AND
                                           RECOMMENDATIONS
14   CASSANDRA SYSOUVANH,
15            Defendants.
16

17        Plaintiff is a state prisoner proceeding pro se and in forma pauperis in this civil rights

18   action under 42 U.S.C. § 1983.  Before the court is defendant's pre-answer motion for partial

19   summary judgement (ECF No. 43), which seeks dismissal of plaintiff's First Amendment

20   retaliation claim for failure to exhaust administrative remedies under the Prison Litigation Reform

21   Act, 42 U.S.C. § 1997e et seq.  Also before the court is plaintiff's motion to appoint counsel.

22   (ECF No. 48.)  For the reasons described below, the undersigned recommends that defendant's

23   motion for partial summary judgment be denied and denies plaintiff's motion to appoint counsel.

24                              **BACKGROUND**

25   **I.        Second Amended Complaint**

26        This case proceeds on plaintiff's second amended complaint ("SAC") filed on September

27   1, 2022.  (ECF No. 9.)  Plaintiff alleges that on January 29, 2019, he witnessed defendant

28

                                        1

Sysouvanh, then a correctional officer at Mule Creek State Prison ("MCSP"), performing oral sex on another inmate.  (<u>Id.</u> at 3.)  The next day, Sysouvanh called plaintiff over and said, "You aren't going to mention anything about yesterday are you?"  (<u>Id.</u> at 4.)  Because of Sysouvanh's "aggressive tone and facial expression," plaintiff became nervous and told her she didn't have to worry about him at all.  (<u>Id.</u>)  Defendant Sysouvanh allegedly offered to perform oral sex on plaintiff and agreed to his request for a cell phone.  (<u>Id.</u>)

On February 10, 2019, defendant Sysouvanh notified plaintiff that she had the cell phone. (ECF No. 9 at 5.)  She later called him up to a storage closet and handed him the cell phone.  (<u>Id.</u>) When plaintiff proceeded to step around defendant, she said, "Wait you don't want your other gift?"  (<u>Id.</u>)  Plaintiff responded, "oh yeah," and stepped further back into the closet.  (<u>Id.</u>) Defendant then performed oral sex on plaintiff until he ejaculated.  (<u>Id.</u>)

On February 27, 2019, officers attempted to conduct a search of plaintiff's cell.  (ECF No. 9 at 6.)  Plaintiff was on the phone with defendant Sysouvanh at the time, who advised him to refuse the search.  (<u>Id.</u>)  On March 7, 2019, Sysouvanh notified plaintiff that she decided to resign and promised to "continue her financial abilities" if plaintiff kept their secrets.  (<u>Id.</u>)  During an overfamiliar investigation, plaintiff told investigators there had been overfamiliar conversations prior to defendant's resignation.  (<u>Id.</u> at 6-7.)  Plaintiff has saved text messages, videos, and photos of his interactions with defendant.  (<u>Id.</u>)  Defendant Sysouvanh has threatened to blow up plaintiff's mother's houses if he reports this information.  (<u>Id.</u>)

Upon screening the SAC pursuant to 28 U.S.C. § 1915A, Judge Barnes, the previously assigned magistrate judge, determined that it stated cognizable Eighth Amendment and First Amendment retaliation claims against defendant Sysouvanh.  (<u>See</u> ECF No. 19.)  Regarding the cognizable First Amendment claim, Judge Barnes paraphrased the relevant portion of the complaint as follows: "After plaintiff spoke with ISU [Investigation Services Unit] investigators during an overfamiliar investigating, defendant threatened to blow up the house of plaintiff's mother if plaintiff went forward with reporting the information."  (<u>Id.</u> 1-2.)

**II.      Defendants Motion to Dismiss, Fed. R. Civ. P. 12(b)(6)**

On October 24, 2023, defendant moved to dismiss plaintiff's SAC for failure to state a

1    claim upon which relief can be granted.  (ECF No. 26.)  In addition to challenging the sufficiency

2    of the SAC's allegations, defendant argued that plaintiff failed to exhaust his First Amendment

3    retaliation claim.  (Id. at 8-10.)  Specifically, defendant argued that plaintiff's grievance did not

4    include any information regarding retaliation and failed to put the prison on notice.  (Id. at 9-10.)

5         On January 17, 2024, Judge Barnes issued findings and recommendations that defendant's

6    motion to dismiss be denied.  (ECF No. 33.)  Regarding exhaustion, Judge Barnes determined that

7    a failure to exhaust was not clear from the face of the SAC.  (Id. at 5-6.)  Although plaintiff

8    attached a "Claimant Appeal Claims Decision Response" to the SAC as Exhibit A, Judge Barnes

9    determined that plaintiff did not rely on or otherwise reference the document in the SAC's

10   statement of the claim.  (Id.)  District Judge Drozd adopted Judge Barnes' findings and

11   recommendations in full on March 15, 2024.  (ECF No. 38.)

12        On January 26, 2024, shortly after Judge Barnes issued the recommendation to deny the

13   motion to dismiss, defendant filed an ex parte application for leave to file a pre-answer motion for

14   summary judgment on the issue of exhaustion of plaintiff's First Amendment retaliation claim.

15   (Id.)  Judge Barnes granted defendant's ex parte motion on March 20, 2024, and permitted the

16   parties to engage in limited discovery relating to administrative exhaustion only.  (ECF No. 39.)

17                    **DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

18        **I.    Parties' Briefing**

19             **A.  Defendant's Motion**

20        In her motion for summary judgment, defendant contends that regardless of which alleged

21   protected activity underlies plaintiff's First Amendment retaliation claim,[1] none of plaintiff's

22   grievances put the prison on notice of a retaliation claim against defendant or identified any

23   claims for retaliation separate and apart from his claim for sexual assault.  (Id.)  Defendant adds

24   that MCSP rejected plaintiff's second grievance as untimely and advised him to appeal, but he

---

[1] Defendant claims there are slight inconsistencies in Judge Barnes's screening and motion to
dismiss orders regarding whether the protected activity underlying plaintiff's retaliation claim
was his grievances or his statements to ISU.  (Id. at 6.)  The undersigned disagrees.  Judge Barnes
identified both as potential protected activities based on her reading of the SAC.  (See ECF No.
33 at 7.)  As Judge Barnes noted, defendant may ultimately prevail on the merits, but such
arguments could not be resolved from the four corners of the SAC.  (See id. at 7-8.)

1    failed to do so despite having extensive experience with the grievance process.  (Id. at 8-9.)

2                            **B.  Plaintiff's Opposition**

3          Plaintiff opposes defendant's motion and asserts he has fully exhausted his First

4    Amendment retaliation claim through the prison grievance process.  (ECF No. 46.)  Plaintiff

5    asserts that his grievances did put the prison on notice of retaliation and relies on state regulations

6    and case law to establish that he was not required to appeal his second grievance once MCSP

7    opened up an investigation outside of the grievance process.  (Id. at 4-6.)

8          Plaintiff submitted a separate statement of disputed facts (id. at 9-10), a verified

9    declaration (id. at 11-12), and four exhibits (id. at 13-36).  However, plaintiff did not reproduce

10   defendant's itemized statement of undisputed facts (see ECF No. 43-1) and identify which are

11   admitted and which are disputed as required by Local Rule 260(b).  "Pro se litigants must follow

12   the same rules of procedure that govern other litigants."  King v. Atiyeh, 814 F.2d 565, 567 (9th

13   Cir. 1987) (citation omitted), overruled on other grounds, Lacey v. Maricopa County, 693 F.3d

14   896, 928 (9th Cir. 2012) (en banc).  However, it is well-established that district courts are to

15   "construe liberally motion papers and pleadings filed by pro se inmates and should avoid

16   applying summary judgment rules strictly."  Thomas v. Ponder, 611 F.3d 1144, 1150 (9th Cir.

17   2010).

18         Accordingly, the court considers the record before it in its entirety despite plaintiff's

19   failure to strictly comply with the Local Rules.  See Adv. Comm. Note to 2010 Amendments to

20   Fed. R. Civ. P. 56(e)(4) ("[T]he court may seek to reassure itself by some examination of the

21   record before granting summary judgment against a pro se litigant.").  The court will only

22   consider those assertions in plaintiff's opposition that have evidentiary support in the record.  A

23   party's mere claim that a matter is "disputed" does not suffice to dispute a fact that is supported

24   by competent evidence.  See Coverdell v. Dep't of Soc. & Health Servs., 834 F.Supp.2d 758, 762 (9th

25   Cir. 1987) (recitations of unsworn factual allegations do not adequately oppose competent

26   evidence presented in a motion for summary judgment); Burch v. Regents of Univ. of California,

27   433 F.Supp.2d 1110, 1119 (E.D. Cal. 2006) ("statements in declarations based on speculation or

28   improper legal conclusions, or argumentative statements, are not facts and likewise will not be

considered on a motion for summary judgment" (emphasis omitted)).

### C.  Defendant's Reply

On reply, defendant maintains that plaintiff failed to raise a genuine dispute of material fact regarding his failure to exhaust the retaliation claim.  (ECF No. 47.)  Defendant argues that plaintiff's reliance on the Title 15 regulations is "not relevant to material issues in this case" and that neither of plaintiff's two grievances put the prison on notice of retaliation.  (Id. at 2-3.)

Defendant also raises several arguments regarding the merits of plaintiff's retaliation claim, including that his briefing conceded his First Amendment rights were never chilled (id. at 3) and that defendant's alleged retaliation is not actionable under § 1983 because it occurred after she resigned from MCSP (id. at 2-3, 5).  The court will not consider defendant's merits arguments, or the text messages and other exhibits plaintiff submitted with his opposition to support the merits of his underlying retaliation claim (see ECF No. 46 at 31-36).[2]  Both are outside of the narrow scope of defendant's motion and the limited discovery permitted by Judge Barnes.  (See ECF No. 39.)  Both parties will have an opportunity to address the merits in a motion for summary judgment at a later stage of the case if they so choose.

## II.    Statement of Undisputed Facts

### A.  California's Administrative Grievance Procedure After June 1, 2020

California's administrative grievance procedure is codified at Cal. Code Regs., tit. 15, § 3480 et seq.  (Statement of Undisputed Facts ("SUFs") 2, ECF No. 43-1.)  Between January 2011, and June 1, 2020, the procedure was set out in § 3084 et seq.  (Id.)  The regulations in place when plaintiff filed his grievances on October 20, 2020, and December 2, 2020, respectively, were those that went into effect on June 1, 2020.[3]

Under those rules, claimants were required to submit a grievance on the CDCR 602-1 form "within 30 calendar days of discovering an adverse policy, decision, action, condition, or omission by the Department."  (§ 3482(b); SUF 8.)  The grievance could raise "one or more

---

[2] Defendant raised merits argument on reply despite acknowledging earlier in her motion for summary judgment that such issues were outside of its scope and would be addressed in a later summary-judgment motion on the merits if necessary.  (See ECF No. 43 at 6, n.2.)

[3] All further references are to § 3480 et seq. as effective on Jun. 1, 2020, unless otherwise noted.

1  claims, subject to the requirements in section 3482, to dispute a policy, decision, action,

2  condition, or omission by [CDCR] or [CDCR] staff that causes some measurable harm to the

3  inmate's "health, safety, or welfare." (§ 3481(a).)  Section 3482 required a claimant to "describe

4  all information known and available to the claimant regarding the claim, including key dates and

5  times, names and titles of all involved staff members (or a description of those staff members),

6  and names and titles of all witnesses, to the best of the claimant's knowledge.  (§ 3482(c)(2); SUF

7  3.)  The claimant must also include all supporting documents available to the claimant related to

8  the claim or identify to the best of the claimant's ability all relevant records with sufficient

9  specificity for those records to be located.  (§ 3482(c)(4); SUF 3.)

10         Since June 1, 2020, the administrative grievance review process consists of two levels of

11  review: (1) the Office of Grievances ("OOG") at the institution level; and (2) the Office of

12  Appeals ("OOA") at the state agency level.  (§§ 3481-83, 3485; SUF 7.)  Until 2022, a claimant

13  had 30 days to appeal the OOG decision to the OOA.  (§ 3485(b); SUF 11.)

14  **B.  Defendant's Alleged Retaliatory Actions**

15         The facts underlying plaintiff's SAC began in January 2019 when he was incarcerated at

16  MCSP.  (See ECF No. 9.)  Defendant Sysouvanh told plaintiff she was resigning from MCSP on

17  March 7, 2019.  (SUF 12, ECF No. 43-1 at 7.)  Defendant turned in her resignation to MCSP that

18  same day, effective March 14, 2019.  (Id.)  Plaintiff remained at MCSP until May 20, 2019.  (See

19  Declaration of D. Haynie ¶ 2, ECF No. 46 at 11.)

20         Plaintiff claims four separate retaliatory actions by defendant: (1) giving him a cell phone

21  and a gold chain between February 2019 and March 7, 2019; (2) telling him she knew where his

22  mother lived between February 2019 and March 7, 2019; (3) paying $2,500 to the law firm of

23  Beles & Beles, who represented plaintiff in a sentencing matter; and (4) threatening to blow up

24  his mother's house in October of 2020.  (SUF 13, ECF No. 43-1 at 7.)

25  **C.  Plaintiff's First Grievance, No. 50830 (Oct. 20, 2020)**

26         Plaintiff submitted two grievances relevant to his claims of sexual assault against

27  defendant Sysouvanh in 2020 while he was an inmate at California Correctional Institution (CCI).

28  (SUF 15.)  Plaintiff filed the first grievance on October 20, 2020, which was reassigned to MCSP

1    with the log number 50380.  (Id.)

2    Grievance 50830 states in pertinent part: "During January 2019 through and including

3    early March 2019, while housed at [MCSP], I had been coerced to engage in sexual activities in

4    exchange for favors by a female correctional officer who resigned from state service on March

5    14, 2019." (SUF 16, ECF No. 43-1 at 8-9; Declaration of H. Fletes ("Fletes Decl."), Exh. A-4,

6    ECF No. 43-4 at 84.)  Plaintiff requested that he be "fully protected from any and all retaliation

7    measures such as, threats, unnecessary excessive force by staff and all of which is defined in

8    (CCR) Title 15, § 3401.5 and Penal Code § 289.6." (Id.)  The Grievance also requested that

9    plaintiff's claim be fully investigated by the Office of Internal Affairs ("OIA"), the entity with

10   authority to investigate allegations of employee misconduct.  (Id.)

11   OOG at MCSP disapproved Grievance 50830 on November 17, 2020, because it did not

12   satisfy the criteria required for a Prison Rape Elimination Act ("PREA") investigation "due to no

13   additional information presented." (Fletes Decl., Ex. A-5, ECF No. 43-4 at 81.)  Plaintiff

14   appealed the OOG decision on November 18, 2020.  (SUF 18; Declaration of Howard E. Moseley

15   ("Moseley Decl."), Exh. E-3, ECF No. 44 at 16.)  Plaintiff identified his appeal as "Staff sexual

16   misconduct in violation of Title 15, section 3401.5." (Id.)  Plaintiff argued in the appeal that ISU

17   failed to do a "follow up investigation" and consider his "substantial evidence," including text

18   message, photographic and video evidence, against defendant Sysouvanh.  (Id.)

19   On February 10, 2021, OOA granted plaintiff's appeal of Grievance No. 50830.  (SUF 19;

20   Moseley Decl., Exh. E-3, ECF No. 44 at 14.)  OOA determined that a new investigation was

21   warranted because the previous ISU investigation concerned only overfamiliarity, not employee-

22   on-inmate sexual conduct.  (Id.)  At the end of the document, OOA wrote: "This decision

23   exhausts the administrative remedies available to the claimant within CDCR." (Moseley Decl.,

24   Exh. E-3, ECF No. 44 at 14-15.)

25   **D.  Plaintiff's Second Grievance, No. 63847 (Dec. 2, 2020)**

26   Plaintiff submitted his second grievance, assigned No. 63847, on December 2, 2020. (SUF

27   21; Fletes Decl., Exh. A-5, ECF No. 43-4 at 90.)  Plaintiff identified the subjects as (1) "sexual

28   harassment [§] 3401.6"; and (2) "staff sexual misconduct [§] 3401.5." (Id.)  The grievance states

7

1  in pertinent part: "During January 2019 through and including March 2019, which at [MCSP], I

2  was bribed, coerced and threatened to engage in a sexual relationship with correctional officer

3  Sysouvanh." (Feletes Decl., Exch. A-5, ECF No. 43-4 at 90.) Plaintiff went on to explain that he

4  located direct evidence to support his previous grievance, No. 50830, and received instruction

5  from MCSP to file a new grievance if he discovered additional information. (Id. at 90-92.)

6       Plaintiff continued his allegations against defendant Sysouvanh in an attachment to the

7  grievance:

8      On March 07, 2019, Ms. Sysouvanh surprisingly notified me that she had made a
   decision to leave the Department because [inmate Frost] was pressuring her for to

9      [sic] much, but promised to continue to take care of me if I kept my mouth shut.
   During the investigation via ISU, I told investigators there had been no contact

10      period prior to Sysouvanh's resignation, because of financial offerings and fear
   tactics.

11

12  (Fletes Decl. Exh. A-5, ECF No. 43-4 at 96.)

13       On December 7, 2020, the MCSP Office of Grievances rejected grievance No. 63847 as

14  untimely. (Feletes Decl., Exh. A-5, ECF No. 43-4 at 89.) The notice states that plaintiff may

15  appeal to the CDCR's Office of Appeals if he was dissatisfied with the response. (Id.) Plaintiff

16  did not appeal. (SUF 22, ECF No. 43-1 at 10-11.)

17      **III.**    **Legal Standard**

18          **A.  Summary Judgment**

19       Summary judgment is appropriate when it is demonstrated that there "is no genuine

20  dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R.

21  Civ. P. 56(a). Under summary judgment practice, "[t]he moving party initially bears the burden

22  of proving the absence of a genuine issue of material fact." In re Oracle Corp. Sec. Litig., 627

23  F.3d 376, 387 (9th Cir. 2010) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)). The

24  moving party may accomplish this by "citing to particular parts of materials in the record,

25  including depositions, documents, electronically stored information, affidavits or declarations,

26  stipulations (including those made for purposes of the motion only), admissions, interrogatory

27  answers, or other materials" or by showing that such materials "do not establish the absence or

28  presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to

1    support the fact." Fed. R. Civ. P. 56(c)(1).

2         "Where the non-moving party bears the burden of proof at trial, the moving party need

3    only prove that there is an absence of evidence to support the non-moving party's case." Oracle

4    Corp., 627 F.3d at 387 (citing Celotex, 477 U.S. at 325); see also Fed. R. Civ. P. 56(c)(1)(B).

5    Indeed, summary judgment should be entered, "after adequate time for discovery and upon

6    motion, against a party who fails to make a showing sufficient to establish the existence of an

7    element essential to that party's case, and on which that party will bear the burden of proof at

8    trial." Celotex, 477 U.S. at 322. "[A] complete failure of proof concerning an essential element

9    of the nonmoving party's case necessarily renders all other facts immaterial." Id. at 323. In such

10   a circumstance, summary judgment should "be granted so long as whatever is before the district

11   court demonstrates that the standard for the entry of summary judgment, as set forth in Rule

12   56(c), is satisfied." Id.

13        If the moving party meets its initial responsibility, the burden then shifts to the opposing

14   party to establish that a genuine issue as to any material fact actually does exist. Matsushita Elec.

15   Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986). In attempting to establish the

16   existence of this factual dispute, the opposing party may not rely upon the allegations or denials

17   of its pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or

18   admissible discovery material, in support of its contention that the dispute exists. See Fed. R.

19   Civ. P. 56(c). The opposing party must demonstrate that the fact in contention is material, i.e., a

20   fact "that might affect the outcome of the suit under the governing law," and that the dispute is

21   genuine, i.e., "the evidence is such that a reasonable jury could return a verdict for the nonmoving

22   party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

23        In the endeavor to establish the existence of a factual dispute, the opposing party need not

24   establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual

25   dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at

26   trial." T.W. Elec. Serv., 809 F.2d at 631. Thus, the "purpose of summary judgment is to 'pierce

27   the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'"

28   Matsushita, 475 U.S. at 587 (quoting Adv. Comm. Note to 1963 Amendments to Fed. R. Civ. P.

1    56(e)).

2          In resolving the summary judgment motion, the evidence of the opposing party is to be

3    believed.  See Anderson, 477 U.S. at 255.  All reasonable inferences that may be drawn from the

4    facts placed before the court must be drawn in favor of the opposing party.  See Matsushita, 475

5    U.S. at 587.  Nevertheless, inferences are not drawn out of the air, and it is the opposing party's

6    obligation to produce a factual predicate from which the inference may be drawn.  See Richards

7    v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902

8    (9th Cir. 1987).  Finally, to demonstrate a genuine issue, the opposing party "must do more than

9    simply show that there is some metaphysical doubt as to the material facts. ... Where the record

10   taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no

11   'genuine issue for trial.'"  Matsushita, 475 U.S. at 587 (citation omitted).

12                        **B.  Administrative Exhaustion**

13         Under the Prison Litigation Reform Act ("PLRA"), "[n]o action shall be brought with

14   respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner

15   confined in any jail, prison, or other correctional facility until such administrative remedies as are

16   available are exhausted."  42 U.S.C. § 1997e(a); see also Merchant v. Corizon Health, Inc., 993

17   F.3d 733, 742 (9th Cir. 2021) ("Before challenging prison conditions under Section 1983, a

18   prisoner must exhaust 'such administrative remedies as are available.'" (quoting 42 U.S.C. §

19   1997e(a))).  Exhaustion is required regardless of the type of relief sought and the type of relief

20   available through administrative procedures.  Booth v. Churner, 532 U.S. 731, 741 (2001).  The

21   exhaustion requirement applies to all claims relating to prison life that do not implicate the

22   duration of the prisoner's sentence.  See Porter v. Nussle, 534 U.S. 516, 532 (2002).

23         "[T]o properly exhaust administrative remedies prisoners 'must complete the

24   administrative review process in accordance with the applicable procedural rules,'—rules that are

25   defined not by the PLRA, but by the prison grievance process itself."  Jones v. Bock, 549 U.S.

26   199, 218 (2007) (quoting Woodford v. Ngo, 548 U.S. 81, 88 (2006)); see also Reyes v. Smith,

27   810 F.3d 654, 657 (9th Cir. 2016) ("[I]t is the prison's requirements, and not the PLRA, that

28   define the boundaries of proper exhaustion" (quoting Jones, 549 U.S. at 218)).  An untimely or

1   otherwise procedurally defective grievance will not satisfy the exhaustion requirement.  See

2   Woodford, 548 U.S. at 90.  However, a grievance need not (1) include legal terminology or legal

3   theories unless they are in some way needed to provide notice of the harm being grieved; nor (2)

4   contain every fact necessary to prove each element of an eventual legal claim.  Griffin v. Arpaio,

5   557 F.3d 1117, 1120 (9th Cir. 2009).

6       Failure to exhaust is an affirmative defense that defendants must raise and prove.  Albino

7   v. Baca, 747 F.3d 1162, 1166 (9th Cir. 2014) (en banc) (quoting Jones, 549 U.S. at 204).  "If

8   undisputed evidence viewed in the light most favorable to the prisoner shows a failure to exhaust,

9   a defendant is entitled to summary judgment under [Federal Rule of Civil Procedure] 56."

10  Albino, 747 F.3d at 1166.  "If material facts are disputed, summary judgment should be denied,

11  and the district judge rather than a jury should determine the facts [relevant to exhaustion]."  (Id.)

12      **IV.    Discussion**

13      The parties agree that plaintiff's two potential avenues for exhaustion are: (1) Grievance

14  No. 50830, submitted on October 20, 2020; and (2) Grievance No. 63847, submitted on

15  December 2, 2020.  (See SUF 15; Plaintiff's Opp., ECF No. 46 at 2; Declaration of Corinna

16  Arbiter ("Arbiter Decl."), Exh. G-1, Haynie Depo. at 25:4-7, ECF No. 45-1 at 9.)  The court will

17  address each grievance in turn to determine whether plaintiff has exhausted his retaliation claim.

18      **A.  Grievance No. 50830 did not put MCSP officials on notice of retaliation.**

19      OOA declared that its decision granting Grievance No. 50830 "exhausts the

20  administrative remedies available to [plaintiff] within CDCR."  (See Moseley Decl., Exh. E-3,

21  ECF No. 44 at 14-15.)  Therefore, the appropriate analysis is not whether plaintiff pursued all

22  available administrative remedies, but whether Grievance No. 50830 adequately informed prison

23  officials of the problem grieved – i.e., retaliation.  "A grievance suffices to exhaust a claim if it

24  puts the prison on adequate notice of the problem for which the prisoner seeks redress."  Sapp v.

25  Kimbrell, 623 F.3d 813, 824 (9th Cir. 2010) (citing Jones, 549 U.S. at 218).  The primary purpose

26  of a grievance is to alert the prison to a problem and facilitate its resolution, not to lay

27  groundwork for litigation.  Id.; Griffin, 557 F.3d at 1120.  "The grievance process is only required

28  to 'alert prison officials to a problem, not to provide personal notice to a particular official that he

11

1    may be sued.'" <u>Reyes</u>, 810 F.3d at 659 (9th Cir. 2016) (quoting <u>Jones</u>, 549 U.S. at 219).

2        Defendant's primary argument is that Grievance No. 50830 did not contain the required

3    factual detail to alert prison officials to any alleged retaliation.  Specifically, defendant claims that

4    plaintiff did not (1) identify what First Amendment conduct he engaged in that prompted the

5    alleged retaliation; (2) identify any retaliatory adverse action by defendant; or (3) allege any

6    conduct by defendant that chilled the exercise of his First Amendment rights.  (ECF No. 47 at 4.)

7        The minimum level of detail required to put the prison on notice of the problem is set out

8    in Cal. Code Regs., tit. 15, § 3482.[4]  <u>See Sapp</u>, 623 F.3d at 824 ("To provide adequate notice, the

9    prisoner need only provide the level of detail required by the prison's regulations" (citing <u>Jones</u>,

10    549 U.S. at 218)).  Under the applicable version of § 3482, an inmate was required to use a

11    CDCR Form 602-1 to "describe all information known and available to the claimant regarding the

12    claim, including key dates and times, names and titles of all involved staff members (or a

13    description of those staff members), and names and titles of all witnesses, to the best of the

14    claimant's knowledge."  (§ 3482(c)(2).)

15        The gravamen of Grievance No. 50830 is "staff sexual assault."  The only portion

16    potentially relevant to retaliation is Section B, where plaintiff requested that he be "fully

17    protected from any and all retaliation measures such as, threats, unnecessary excessive force by

18    staff and all of which is defined in (CCR) Title 15, § 3401.5 and Penal Code § 289.6."  (Fletes

19    Decl., Exh. A-4, ECF No. 43-4 at 84.)  Section 3401.5 has remained unchanged since plaintiff

20    filed Grievance No. 50830 and reads in relevant part:

21
22          Retaliatory measures against incarcerated/supervised persons who report incidents
         of staff sexual misconduct shall not be tolerated and shall result in disciplinary
         action and/or criminal prosecution. Such retaliatory measures include, but are not

23          limited to, coercion, threats of punishment, or any other activities intended to
         discourage or prevent an incarcerated person/supervised person from reporting

24

---

25   [4]  Defendant identifies § 3482 as the applicable standard in her summary judgment motion.  (ECF
No. 43 at 2.)  But on reply, defendant claims the regulation in place at the time plaintiff filed his

26   grievances was its predecessor, § 3084.2. (ECF No. 47 at 3-4.)  Because § 3084.2 was repealed
effective June 1, 2020, the court applies § 3482.  <u>See King v. Valley State Prison</u>, No. 1:20-cv-

27   0024 DAD GSA PC, 2022 WL 3328227, at *12 (E.D. Cal. Aug. 11, 2022) (explaining that §§
3084-3084.9 governed PLRA exhaustion only through June 1, 2020), <u>report and recommendation</u>

28   <u>adopted</u>, No. 1:20-cv-0024 ADA GSA PC, 2023 WL 199406 (E.D. Cal. Jan. 17, 2023).

sexual misconduct.[5]

(Cal. Code Regs., tit. 15, § 3401.5(f).)  Citing plaintiff's deposition testimony, defendant argues

that plaintiff's reference to § 3401.5 was not a complaint about past retaliation by defendant, but a

request for <u>future</u> protection from retaliation by other MCSP officers:

> Q.    So when you, in Section B on that first page of it, were asking to be fully
>        protected from any and all retaliation measures, who were you – such as
>        threats, unnecessary excessive force by staff.  Who were you specifically
>        seeking protection from in that?
>
> A.    Any other California Department of Correctional officers that may seek
>        retaliation based on I'm filing a grievance on another officer.

(ECF No. 43 at 4; Arbiter Decl., Exh. G-1, ECF No. 45 at 18.)  Defendant further asserts that this

language couldn't refer to defendant because plaintiff testified that he knew defendant no longer

worked at MCSP when he submitted the grievance.  (<u>Id.</u>)

Defendant has met her initial burden.  On its face, Grievance No. 50830 did not contain

sufficient facts to put the prison on notice of defendant's alleged retaliation.[6]  In particular,

plaintiff did not "describe all information known and available" to him regarding defendant's

alleged retaliatory acts.  (<u>See</u> § 3482(c)(2).)  Defendant further established that plaintiff included

the only potentially pertinent portion, Section B, not to alert officials to defendant's past

retaliatory actions but to protect plaintiff from future retaliation by other officers.

The burden then shifts to plaintiff to establish a genuine issue of material fact.  Plaintiff

first contends that Grievance No. 50830 gave all the notice required by Title 15.  (ECF No. 46 at

6.)  Plaintiff relies solely on the grievance's reference to § 3401.5, which he asserts encompasses

the types of coercion and threats made by defendant.  (<u>See id.</u>)  But plaintiff offers no evidence to

refute his deposition testimony that he included the citation solely to protect himself from future

retaliation by other MCSP staff.  The court finds no such support elsewhere in the record.

---

[5]  Cal. Penal Code § 289.6 is irrelevant to the exhaustion analysis.  It prohibits prison staff from
engaging in sexual activity with inmates and contains no retaliation provisions.

[6]  Defendant also argues that plaintiff failed to give notice by omitting defendant's name.  The
court disagrees.  Section 3482(c)(2) requires an inmate to provide the name of all involved staff
members or "*or a description of those staff*."  (Emphasis added.)  Plaintiff's description of a
"female correctional officer who resigned from state service on March 14, 2019," was sufficient.
(<u>See</u> Feletes Decl., Exh. A-4, ECF No. 43-4 at 84.)  Further, it was reasonable for plaintiff to not
name defendant considering his concern for future by retaliation by officers that may know her.

1    Plaintiff also argues that he submitted his grievances before the January 2022 revision to §

2    3482(c), which raised the "level of detail" required.  (Id.)  But there is no substantive difference

3    between the June 2020 and January 2022 versions of § 3482(c); the only change was to require

4    inmates to use the newest version of CDCR Form 602-1.  (Compare § 3482(c)(1) & (5) (eff. Jan.

5    5, 2022, Register 2022, no. 1).)  Regardless, plaintiff did not put forth any information regarding

6    defendant's alleged retaliation, let alone enough to meet a more lenient standard.

7    Accordingly, for exhaustion purposes, the court finds that Grievance No. 50830 did not

8    put MCSP on notice of defendant's alleged retaliation.  See Dixon v. Oleachea, No. 2:15-cv-2372

9    KJM AC P, 2020 WL 5604276, at *13 (E.D. Cal. Sept. 18, 2020) (recommending grant of

10   summary judgment to defendant where plaintiff's grievance failed to alert officials to retaliation),

11   report and recommendation adopted, No. 2:15-cv-2372 KJM AC P, 2021 WL 2941164 (E.D. Cal.

12   July 13, 2021); Adams v. Azevedo, No. 17-CV-2043 CRB (PR), 2018 WL 1911357, at *2 (N.D.

13   Cal. Apr. 23, 2018) (granting summary judgment on exhaustion where inmate's exhausted

14   appeals did not involve the same subject and request for relief as his § 1983 retaliation claim).

15   **B.  Plaintiff exhausted available relief through Grievance No. 63847.**

16   Plaintiff filed Grievance No. 63847 on December 2, 2020, almost a month and a half after

17   submitting Grievance No. 50830.  On the CDCR 602-1 form, as well as at his deposition, plaintiff

18   explained this was a follow-up grievance he filed after receiving additional evidence against

19   defendant.  He claims he submitted a request to withdraw Grievance No. 50830 beforehand but it

20   still went through.  (Arbiter Decl., Exh. G-1, Haynie Depo., 44:4-13; 45:13-16, ECF No. 45-1 at

21   19-20; see also Fletes Decl., Exh. A-5, ECF No. 43-4 at 92.)

22   The undersigned finds that Grievance No. 63874 put officials on notice of defendant's

23   alleged retaliation as a matter of law.  In the grievance's attachment, plaintiff wrote that on March

24   7, 2019, defendant told him she was resigning "but promised to continue to take care of me if I

25   kept my mouth shut." (Fletes Decl., Exh. A-5, ECF No. 43-4 at 96.)  Plaintiff added that he lied

26   to ISU investigators because of defendant's "financial offerings and fear tactics."  (Id.)  These

27   allegations track the retaliation claim raised in the SAC and screened in by Judge Barnes.  (See

28   ECF No. 19 at 1-2 ("Plaintiff's [SAC] alleged defendant…promised further 'financial abilities' if

14

1  plaintiff would keep their secrets"); see also ECF No. 33, report and recommendation adopted,

2  ECF No. 38 (recommending denial of motion to dismiss where "defendant allegedly made a

3  threat of harm that could chill or silence a person of ordinary firmness from future First

4  Amendment activities").)  Further, it is evident from the grievance that plaintiff intended to

5  incorporate the attachment; plaintiff checked the box on the CDCR 602-1 form indicating he

6  attached supporting documents and wrote "Full Report Included" underneath.  (Fletes Decl., Exh.

7  A-5, ECF No. 43-4 at 90.)  Defendant offered this attachment into evidence but doesn't otherwise

8  mention or address it in her briefing.  Thus, Grievance No. 63874 presents the inverse scenario of

9  Grievance No. 50830 – in the former, plaintiff put the prison on notice of the alleged retaliation,

10  but did not pursue his appeal to the second level.

11      The court proceeds under the applicable burden-shifting analysis.  "[A] defendant must

12  first prove that there was an available administrative remedy and that the prisoner did not exhaust

13  that available remedy."  Williams v. Paramo, 775 F.3d 1182, 1191 (9th Cir. 2015) (citing Albino,

14  747 F.3d at 1168) (quotation marks omitted).  Defendant offers evidence that California employs

15  a two-level administrative grievance review process laid out at Cal. Code Regs., tit. 15, § 3480 et

16  seq.  (Feletes Decl. ¶ 5, ECF No. 43-4 at 4.)  Next, defendant established that the MCSP OOG

17  rejected Grievance No. 63847 as untimely[7] and that plaintiff did not appeal to the second level of

18  review.  (Fletes Decl., Exh. A-5, ECF No. 43-4 at 89; Arbiter Decl., Exh. G-1, Haynie Depo.

19  44:25-47:2.)  Therefore, defendant has met her initial burden.

20      The burden then shifts to Plaintiff, "who must show that there is something particular in

21  his case that made the existing and generally available administrative remedies effectively

22  unavailable to him by showing that the local remedies were ineffective, unobtainable, unduly

23  prolonged, inadequate, or obviously futile."  Williams, 775 F.3d at 1191 (citing Albino, 747 F.3d

24  at 1168) (quotation marks omitted).  Plaintiff argues that (1) MCSP's characterization of his

25  grievance as a "staff complaint" and referral to OIA exhausted administrative remedies; and (2)

26

27  [7] Defendant says the grievance was also rejected as "duplicative."  (See SUF 22, ECF No. 43-4 at
   10-11.)  Nowhere on the rejection notice or the other sources for SUF 22 does the MCSP Office
28  of Grievances indicate the grievance was rejected as duplicative.  (See ECF No. 43-4 at 89.)

15

1    his grievance was timely because there is no time limit for grievances alleging staff-on-inmate

2    sexual assault.  (See ECF No. 46 at 4-5.)  The court addresses each argument in turn.

3                    **i.  Plaintiff's failure to appeal the grievance is not dispositive.**

4            Plaintiff admits he did not appeal Grievance No. 63847 but argues he exhausted because

5    prison officials characterized it as a "staff complaint."  (ECF No. 46 at 4-5.)  "Specifically, in

6    CDCR's response to (Grievance 63847) the responding official stated that, 'due to the allegations

7    in your claim will be addressed outside the grievance process' …. Therefore, plaintiff did not

8    need to seek an appeal to the Office of Appeals because the allegations of his claim were to be

9    addressed outside of the grievance process.'"  (Id. at 5.)  "Staff complaint" refers to the separate

10   process for handling grievances alleging staff misconduct and was codified at § 3484 at the time.

11   Under this framework, prisons were required to refer claims alleging staff misconduct to OIA for

12   "completion of an allegation inquiry or formal investigation[.]"  (§ 3483(d).)

13           MCSP's one-page response to Grievance No. 63847 does not use the term "staff

14   complaint" or explain how MCSP will address plaintiff's claim "outside of the grievance

15   process."  (See Fletes Decl., Exh. A-5, ECF No. 43-4 at 89.)  However, on reply, defendant did

16   not refute that MCSP identified at least some of the grievance's allegations as a "staff complaint."

17   (See ECF No. 47 at 2 ("[T]he fact that [MCSP] identified Haynie's grievances against Sysouvanh

18   for other conduct as "Staff Complaints" does not excuse him from exhausting the retaliation

19   claim."))  Further, plaintiff inferred from the response that MCSP opened all his allegations as

20   staff complaints because prison rules required MCSP to give notice that some claims may be

21   appealed separately.  (ECF No. 6 at 4 (citing Brown v. Valoff, 422 F.3d 926, 939 (9th Cir.

22   2005)).)  Thus, viewing the MCSP response in the light most favorable to plaintiff, the court

23   reasonably infers that MCSP did in fact characterize plaintiff's grievance as a "staff complaint."

24           Defendant argues that whether a grievance is characterized as a "staff complaint" has "no

25   bearing on whether [plaintiff] exhausted the administrative remedies."  (ECF No. 47 at 3.)  The

26   court disagrees.  "[A] majority of courts within this Circuit have held that a prisoner's

27   administrative remedies for pursuing a staff complaint appeal are exhausted when an OIA

28   investigation is ordered because no further remedies remain available[.]"  Beltran v. Baker, No.

1    2:17-cv-1520 TLN AC P, 2021 WL 5280609, at *8 (E.D. Cal. Nov. 12, 2021), <u>report and</u>

2    <u>recommendation adopted,</u> No. 2:17-cv-1520 TLN AC, 2022 WL 105109 (E.D. Cal. Jan. 11,

3    2022).  While not controlling here, the most recent administrative grievance procedures effective

4    January 1, 2025, state that when a grievance is "identified as staff misconduct…a claimant may

5    not appeal the decision issued by the Office of Grievances, therefore, the administrative remedies

6    process is exhausted."  (§ 3483(*l*)(3).)

7         Plaintiff's argument here relies on <u>Brown</u>, 422 F.3d 926, where the Ninth Circuit first held

8    that diversion to the staff complaint process may constitute exhaustion.  (ECF No. 46 at 4.)

9    <u>Brown</u> concerned claims filed under CDCR's prior four-step review process.  The prison granted

10   plaintiff's second-level appeal in part and referred it over to the separate "staff complaint"

11   process.  The second-level notice "did not counsel that any further review was available," and

12   Brown did not seek third-level review.  <u>Brown</u>, 422 F.3d at 937-938.  Reading the second-level

13   notice and CDCR procedures together, the Ninth Circuit held that it was reasonable for plaintiff

14   to infer that "no further relief was 'available' through the appeals process once the staff

15   misconduct investigation was opened."  <u>Id.</u> at 939.

16        In <u>Brown</u>, the Ninth Circuit specifically looked to the prison's "response memoranda" and

17   other "information provided to the prisoner concerning the operation of the grievance procedure"

18   to "inform[] our determination of whether relief was, as a practical matter, 'available.'"  <u>See</u>

19   <u>Brown</u>, 422 F.3d at 937.  Here, MCSP's response counseled plaintiff that a second level of review

20   was available: "This serves as your response by the Office of Grievances.  If you are dissatisfied

21   with this response, you may appeal the rejection decision to CDCR's Office of Appeals."  (Fletes

22   Decl., Exh. A-5, ECF No. 43-4 at 89.)

23        Critically, the MCSP response instructs plaintiff to appeal only if he is "dissatisfied."  The

24   evidence shows that plaintiff in fact achieve his desired result.  In his grievance, plaintiff

25   requested that defendant "be thoroughly investigated by [OIA] for Prosecution."  (Fletes Decl.,

26   Exh. A-5, ECF No. 43-4 at 90.)  Plaintiff interpreted MCSP's response to mean his claim would

27   in fact be investigated by OIA.  (Arbiter Decl., Exh. G-1, Haynie Depo. at 45:21-24 ("This

28   grievance, to my knowledge, it was also supposed to be addressed outside of being processed by

1 OIA"); see also ECF No. 46 at 5 ("Plaintiff understood this response would be submitted…for

2 further follow-up investigation").)  Because plaintiff was satisfied, the court finds it was

3 reasonable for him to interpret MCSP's response as not requiring further appeal.  See Dixon,

4 2020 WL 5604276, at *11 ("It is insufficient for defendants to rely on language informing

5 plaintiff that he must pursue further administrative review if no further relief is available");

6 Willard v. Sebok, No. CV 13-2251 SJO JEM, 2016 WL 1742999, at *6 (C.D. Cal. Mar. 18,

7 2016), report and recommendation adopted by 2016 WL 1735799 (C.D. Cal. May 1, 2016) ("The

8 Court rejects any notion that, simply because an appeal is available, an inmate must pursue it

9 even if no relief is available, as inconsistent with Brown. The Court is not alone, as numerous

10 other courts have made the same determination.")

11     The court is especially persuaded by the factually similar case Ratcliff v. California Inst.

12 for Women, No. 5:22-cv-1638 SVW BFM, 2024 WL 4394550 (C.D. Cal. Aug. 26, 2024), report

13 and recommendation adopted, No. 5:22-cv-1638-SVW-BFM, 2024 WL 4394733 (C.D. Cal. Oct.

14 2, 2024).  There, an inmate filed a "staff complaint" against a prison dentist but failed to appeal to

15 the second level.  The grievance response similarly instructed the inmate to appeal if

16 "dissatisfied."  (Id. at *4.)  The evidence showed plaintiff was satisfied that her complaints "were

17 being taken seriously and would be investigated."  (Id. at *9.)  Thus, the court held that plaintiff's

18 failure to appeal was not dispositive: "To be sure, if an individual is reliably informed that she

19 need not appeal any further, she may rely on that advice and her failure to go further in the

20 process will not be held against her.[8]  (Id.)

21     It is not clear from the record whether MCSP made the required referral to OIA or

22 whether OIA investigated.  But other courts have rejected the notion that Brown required an OIA

23 investigation before a staff complaint satisfies exhaustion: "[T]his Court reads Brown to mean

24 _____

25 [8]  MCSP's response also distinguishes this case from others that declined to follow Brown.  See, e.g., Hawkins v. Winkfield, No. 2:19-cv-1228 TLN KJN P, 2021 WL 4243324, at *8 (E.D. Cal.

26 Sept. 17, 2021), report and recommendation adopted, No. 2:19-cv-1228 TLN KJN, 2021 WL 5112845 (E.D. Cal. Nov. 3, 2021).  In Hawkins, the prison's response advised the inmate that his

27 "administrative remedies will be considered exhausted" only when he proceeded "through all levels of appeal review[.]"  (Id. at *5.)  The court held that the clear instruction distinguished the

28 case from Brown and declined to excuse the inmate's failure to appeal.  (Id. at 8.)

1    that once [plaintiff's] grievance was designated a staff misconduct complaint, there were no

2    further administrative remedies available to her through the grievance process." Ratcliff, 2024

3    WL 4394550, at *11; see also Petillo v. Peterson, No. 1:16-cv 0488 MJS (PC), 2017 WL

4    4844665, at *8 (E.D. Cal. Oct. 25, 2017), report and recommendation adopted by 2018 WL

5    1313422 (E.D. Cal. Mar. 14, 2018) (noting that the court had no information about the outcome

6    of the staff complaint, but finding that the plaintiff had exhausted his remedies once his grievance

7    was treated as a staff complaint per Brown).

8        Defendant's remaining arguments are unavailing.  Defendant cites plaintiff's extensive

9    grievance experience as evidence that he should have known to appeal.  (ECF No. 43 at 14.)  But

10   a reasonable trier of fact could just as easily cite plaintiff's familiarity with the grievance process

11   as support for his belief that an appeal was not required once his claim was characterized as a

12   staff complaint.  Finally, although defendant established the second-level review was available,

13   defendant does not identify what specific relief that appeal could provide.  See Beltran, 2021 WL

14   5280609, at *8 (referral of staff complaint to OIA satisfied exhaustion where defendants "have

15   not identified any concrete, additional relief that would have been available to plaintiff on

16   [appeal]"), report and recommendation adopted, No. 2:17-cv-1520 TLN AC, 2022 WL 105109

17   (E.D. Cal. Jan. 11, 2022).  Accordingly, the court finds that plaintiff has established that appeal to

18   the second level would not have provided additional relief.

19        **ii.  MCSP's provision of relief waived defendant's timeliness defense.**

20       The court next considers whether MCSP's rejection of the grievance as untimely

21   precludes exhaustion independent of plaintiff's failure to appeal.  Generally, the filing of an

22   untimely grievance or appeal is not proper exhaustion.  See Woodford, 548 U.S. at 83-84.  "[A]

23   prisoner must 'complete the administrative review process in accordance with the applicable

24   procedural rules, including deadlines, as a precondition to bringing suit in federal court.'"  Harvey

25   v. Jordan, 605 F.3d 681, 683 (9th Cir. 2010) (quoting Marella v. Terhune, 568 F.3d 1024, 1027

26   (9th Cir. 2009)).

27       The applicable regulation at the time required plaintiff to submit the grievance within "30

28   calendar days of discovering an adverse policy, decision, action, condition, or omission by the

1  Department." (§ 3482(b).)  It is undisputed that plaintiff filed Grievance No. 63847 nearly two

2  years after the facts forming the basis of his allegations.  Nevertheless, plaintiff argues that his

3  grievance was timely because there is no time limit for filing allegations of staff-on-inmate sexual

4  misconduct under the Title 15 regulations.  (ECF No. 46 at 2, 9 (citing Cal. Code Regs., tit. 15, §

5  3084(c)(1)).  Defendant counters that the time limit for sexual assault claims is irrelevant to the

6  question of whether he exhausted his retaliation claim.  (ECF No. 47 at 2-3.)

7       The Ninth Circuit has carved out an exception to exhaustion where prison officials screen

8  out grievances "for reasons inconsistent with or unsupported by applicable regulations."  Sapp,

9  623 F.3d at 824.  Under that framework, the court agrees that MCSP improperly screened out

10  plaintiff's sexual assault claim.  See Nieto v. Allison, et al., No. 22-CV-06983-JST, 2025 WL

11  786354, at *9 (N.D. Cal. Mar. 12, 2025) ("[T]he Court finds that [§ 3084(c)] exempts grievances

12  alleging sexual misconduct from the 30-day deadline for filing a grievance.").  But plaintiff does

13  not explain why his retaliation claim was improperly screened out or cite authorities for applying

14  § 3084 to claims other than sexual assault.  Therefore, plaintiff has not raised a genuine issue of

15  material fact regarding the timeliness of the retaliation claim.

16       Still, a prison's handling of an untimely grievance can constitute a waiver of the

17  exhaustion defense.  See Develder v. Hirshler, No. 2:09-cv-1803 TLN EFB P, 2017 WL 3868478,

18  at *5 (E.D. Cal. Sept. 5, 2017) (collecting cases); Bradley v. Williams, No. CIV. 07-1870 HU,

19  2009 WL 198014, at *2 (D. Or. Jan. 23, 2009); ("[T]his court finds that defendants waived their

20  right to reject plaintiff's grievance by responding to the defective grievance"); Hammett v.

21  Cofield, 681 F.3d 945, 947 (8th Cir. 2012) ("the PLRA's exhaustion requirement is satisfied if

22  prison officials decide a procedurally flawed grievance on the merits"); Conyers v. Abitz, 416

23  F.3d 580, 584 (7th Cir. 2005) ("[W]here the institution treats the filing as timely and resolves it

24  on the merits….the grievance has served its function of inviting prison administrators to take

25  corrective action, and thus the administrative exhaustion requirement has been satisfied").  Here,

26  MCSP rejected plaintiff's grievance as untimely yet still granted his requested relief through the

27  staff complaint process.  Although defendant appears to claim, without support, that only the

28  sexual assault claim was sent to the staff complaint process (see ECF No. 47 at 2), MCSP's notice

1    did not separate out his two claims or give plaintiff any indication that his retaliation allegations

2    would not be addressed "outside of the grievance process." Compare Brown, 422 F.3d at 941-42

3    (holding inmate failed to exhaust the medical and property damage claims that the prison had

4    separated from the staff complaint process and instructed the inmate to appeal). Under these

5    circumstances, the court finds that MCSP's response to the untimely grievance and provision of

6    the requested relief waived defendant's timeliness exhaustion defense.

7        Because the retaliation allegations in Grievance No. 63847 served to notify MCSP

8    officials of Plaintiff's claims in this action, and MCSP processed the untimely claim as a staff

9    complaint and ultimately granted plaintiff his requested relief, the court finds that plaintiff

10    exhausted all available administrative relief. Accordingly, the undersigned recommends that

11    defendant's motion be denied.

12    **PLAINTIFF'S MOTION TO APPOINT COUNSEL**

13        Plaintiff filed a motion to appoint counsel on March 13, 2025. (ECF No. 48.) Plaintiff

14    argues that the nature and seriousness of his sexual assault allegations, the complexity of the

15    evidence, his lack of legal training, and family's hesitancy to assist him due to fear of retaliation,

16    warrant the appointment of counsel here.

17        District courts lack authority under 28 U.S.C. § 1915 to require counsel to represent

18    indigent prisoners in section 1983 cases. Mallard v. United States Dist. Court, 490 U.S. 296, 298

19    (1989). In exceptional circumstances, the court may request that an attorney voluntarily represent

20    such a plaintiff. See 28 U.S.C. § 1915(e)(1); Terrell v. Brewer, 935 F.2d 1015, 1017 (9th Cir.

21    1991); Wood v. Housewright, 900 F.2d 1332, 1335-36 (9th Cir. 1990). The test for exceptional

22    circumstances requires the court to evaluate the plaintiff's likelihood of success on the merits and

23    the ability of the plaintiff to articulate his claims pro se in light of the complexity of the legal

24    issues involved. See Wilborn v. Escalderon, 789 F.2d 1328, 1331 (9th Cir. 1986); Weygandt v.

25    Look, 718 F.2d 952, 954 (9th Cir. 1983). Circumstances common to most prisoners, such as lack

26    of legal education and limited law library access, do not establish exceptional circumstances that

27    would warrant a request for voluntary assistance of counsel. Wood, 900 F.2d at 1335; Riley v.

28    Franke, 340 F. Supp. 3d 783, 787 (E.D. Wis. 2018).

1    Beyond § 1915(e)(1), other sources of law may implicate a request for counsel.  For

2    example, appointed counsel may be required in a civil proceeding as an accommodation for a

3    litigant who is disabled.  See Franco-Gonzalez v. Holder, No. 10-cv-02211 DMG (DTBx), 2013

4    WL 3674492, at *3-*9 (C.D. Cal. Apr. 23, 2013) (granting summary judgment to class of

5    mentally disabled individuals in civil immigration proceedings on their request for appointed

6    representatives under the Rehabilitation Act).  Due process may also require appointment of

7    counsel in certain proceedings. See Turner v. Rogers, 564 U.S. 431, 444-45 (2011) (analyzing

8    request for appointment of counsel in civil proceeding under the Mathews v. Eldridge, 424 U.S.

9    319 (1976), procedural due process framework).

10    Plaintiff's motion relies on Unique v. Claybaugh, No. 22-cv-0711 VKD, 2022 WL

11    2047560 (N.D. Cal. June 7, 2022).  There, two transgender inmates proceeding pro se alleged

12    sexual misconduct by a prison psychologist over a period of a year.  The plaintiffs were later

13    transferred to separate prisons in San Diego and San Luis Obispo, respectively, which hindered

14    their ability to communicate and prosecute their case.  (Id. at *1.)  In the screening order, the

15    magistrate judge found that the nature of the claims and communication barriers constituted

16    exceptional circumstances warranting appointment of counsel.  The court also concluded that the

17    appointed counsel could help the plaintiffs amend their complaint to cure the deficiencies laid out

18    in the screening order, especially as to their more complex municipal liability claims.  (Id. at *3.)

19    Although Unique concerned similar legal claims and subject matter as the present case,

20    the court does not find comparable exceptional circumstances here warranting the appointment of

21    counsel.  For one, unlike the present case, Unique involved two plaintiffs in different parts of the

22    state facing difficulties communicating and coordinating the prosecution of their case.  Further,

23    the magistrate judge had related concerns regarding the plaintiffs' ability to address the curable

24    deficiencies she identified in their complaint on screening.  Here, plaintiff's claims have already

25    been screened in and he is no longer at risk of losing potentially meritorious claims at the

26    pleading stage.

27    Plaintiff also requests counsel to assist in handling more complicated tasks like discovery,

28    securing expert, and trial advocacy.  (ECF No. 48 at 3.)  However, these are challenges common

22

1  to most pro se litigants and do not constitute exceptional circumstances. See Rand, 113 F.3d at

2  1525 (finding no abuse of discretion under 28 U.S.C. § 1915(e) when district court denied

3  appointment of counsel despite fact that pro se prisoner "may well have fared better-particularly

4  in the realm of discovery and the securing of expert testimony"); Courtney v. Kandel, No. 2:18-

5  cv-2052 KJM DMC P, 2020 WL 1432991, at *1 (E.D. Cal. Mar. 24, 2020) (challenges

6  conducting discovery and preparing for trial "are ordinary for prisoners pursuing civil rights

7  claim" and cannot form the basis for appointment of counsel); Thornton v. Schwarzenegger, No.

8  10-cv-1583 BTM RBB, 2011 WL 90320, at *7 (S.D. Cal. Jan. 11, 2011) (explaining that

9  "[f]actual disputes and anticipated cross-examination of witnesses do not indicate the presence of

10  complex legal issues warranting a finding of exceptional circumstances").

11  Further, the court finds plaintiff's request for help locating and gathering evidence due to

12  his incarceration and family's fear of retaliation is premature at this stage of the litigation.

13  Defendant has not yet answered the SAC and the court has not issued a discovery and scheduling

14  order. However, the court will deny the motion without prejudice, meaning that plaintiff can

15  refile at a later stage of the case or if circumstances change. Accordingly, plaintiff's motion to

16  appoint counsel is denied without prejudice.

### CONCLUSION

18  Accordingly, IT IS HEREBY ORDERED that plaintiff's motion to appoint counsel (ECF

19  No. 48) is denied without prejudice.

20  Further, IT IS HEREBY RECOMMENDED that:

21  1. Defendant's pre-answer motion for partial summary judgment (ECF No. 43) is denied.

22  2. In accordance with the court's prior order (ECF No. 39), defendant's answer to the

23  complaint shall be due thirty (30) days from the date of any order by the district judge

24  adjudicating defendant's pre-answer motion for partial summary judgment.

25  These findings and recommendations are submitted to the United States District Judge

26  assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within twenty-one days

27  after being served with these findings and recommendations, any party may file written

28  objections with the court and serve a copy on all parties. Such a document should be captioned

"Objections to Magistrate Judge's Findings and Recommendations."  Any response to the objections shall be filed and served within fourteen days after service of the objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

DATED:  March 21, 2025.

SEAN C. RIORDAN
UNITED STATES MAGISTRATE JUDGE